Carolyn B. HAYMON, et al.,
Appellants,

v.

Marciana W. WILKERSON,
M.D., Appellee.

No. 86–1594.

District of Columbia Court of Appeals.

Argued Nov. 4, 1987.
Decided Dec. 31, 1987.

Aaron M. Levine, Washington, D.C., with whom Brenda C. Wagner, Winston–Salem, N.C., was on the brief, for appellant.

Michael F. Flynn, Jr., with whom Katherine S. Duyer, Rockville, Md., was on the brief, for appellee.

Before NEWMAN, ROGERS and STEADMAN, Associate Judges.

ROGERS, Associate Judge:

This appeal presents the issue whether, in the District of Columbia, a parent may sue to recover extraordinary medical and other health care expenses resulting from the "wrongful birth" of a child with birth defects. The trial court granted a motion to dismiss for failure to state a claim upon which relief may be granted, SUPER.CT. CIV.R. 12(b)(6), dismissing a wrongful birth claim brought by the mother of a child born with Down's Syndrome. The child's mother alleges that her obstetrician's failure to counsel her properly regarding the advisability of performing an amniocentesis was negligent and deprived her and her husband of the choice of terminating her pregnancy. Consequently, the mother seeks to recover damages attributable to the ex-

traordinary medical, nursing and other health care expenses she alleges would not have been incurred but for the negligence of the defendant. We hold that a parent may bring a cause of action for wrongful birth to recover damages for the extraordinary medical and other health care expenses attributable to her child's affliction. Accordingly, we reverse and remand.

## I

Throughout her pregnancy, the plaintiff Ms. Haymon was under the care of defendant Dr. Wilkerson, an obstetrician. Ms. Haymon, who was thirty-four years old, was troubled about the possible implications of pregnancy at this age, and she and her husband asked the doctor about genetic testing. Specifically, they inquired about the advisability of an amniocentesis, a relatively safe *in utero* technique which detects the existence of genetic defects in the fetus. The doctor assured them, even after they had voiced their concerns on several occasions, that an amniocentisis was unnecessary. Ms. Haymon alleges that she has no moral or religious objections to terminating a pregnancy for therapeutic reasons and would have done so had she known she was carrying a fetus with Down's Syndrome. Ignorant of what an amniocentisis would have disclosed, Ms. Haymon allowed her pregnancy to continue, and on February 9, 1986, she gave birth to a daughter who was afflicted with Down's Syndrome, a genetic disorder characterized by mental retardation and physical abnormalities.

On June 13, 1986, Ms. Haymon, individually and as the mother and next friend of her daughter, filed suit against her obstetrician, alleging personal injury and medical malpractice. The complaint alleges that the doctor accepted Ms. Haymon as her patient and rendered obstetrical care throughout the full term of her pregnancy, that the medical care provided by the doctor was negligent and constituted a departure from established standards of medical and obstetrical care in several respects, including the failures to test, obtain an adequate history, utilize adequate clinical

and laboratory diagnostic techniques and studies, monitor the pregnancy, and perform and recommend an amniocentesis. The complaint also alleges that as a result of the doctor's negligence the Haymon's daughter suffered severe and permanent injuries, has and will in the future suffer pain of mind and body, and will be prevented from pursuing her employment and other ordinary activities. The complaint further alleges that Ms. Haymon has and in the future will incur medical, hospital, and nursing expenses for the child's care.

Dr. Wilkerson filed a motion to dismiss the complaint for failure to state a claim pursuant to SUPER.CT.CIV.R. 12(b)(6). The doctor argued that the complaint, consisting of the actions generally known as "wrongful birth" and "wrongful life," did not state causes of action recognized in the District of Columbia. The trial judge granted the motion. On appeal, Ms. Haymon does not contest the dismissal of her daughter's wrongful life action, nor pursue recovery for the ordinary child-rearing expenses associated with the care of a healthy child. Thus, the only issue before this court is that which was expressly reserved for future resolution in *Flowers v. District of Columbia*, 478 A.2d 1073, 1076 n. 3 (D.C.1984), namely, whether a parent's claim for extraordinary medical and other expenses resulting from the wrongful birth of a child with birth defects presents a claim upon which relief may be granted.

## II

■ On appeal from a Rule 12(b)(6) dismissal for failure to state a claim, this court must construe the complaint in the light most favorable to the plaintiff. *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 364 (D.C.1984); *see* SUPER.CT.CIV.R. 8(f) ("[a]ll pleadings shall be so construed as to do substantial justice"). Consequently, we accept as true each of the plaintiff's allegations and all reasonable inferences flowing from them. *Vicky Bagley Realty, Inc.*, *supra*, 482 A.2d at 364. We therefore assume that at the time of pregnancy (1) Dr. Wilkerson failed to counsel Ms. Haymon properly regarding the advisability of performing an amniocentesis; (2) this failure

to recommend an amniocentesis constituted a departure from acceptable medical practice; (3) had the doctor recommended an amniocentesis, Ms. Haymon would have submitted to the procedure; (4) the results of an amniocentesis would have indicated that the child, if born, would be afflicted with Down's Syndrome; and (5) upon being notified of this fact, Ms. Haymon would have terminated the pregnancy. *See Berman v. Allan*, 80 N.J. 421, 426, 404 A.2d 8, 11 (1979); *Becker v. Schwartz*, 46 N.Y.2d 401, 408, 386 N.E.2d 807, 810, 413 N.Y.S.2d 895, 898 (1978). Thus, under standard principles of tort law, Ms. Haymon has met her burden to establish the elements of a negligence action against a physician, which are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the plaintiff's interests proximately caused by the breach. *Psychiatric Institute of Washington v. Allen*, 509 A.2d 619, 623–24 (D.C.1986); *Meek v. Shepard*, 484 A.2d 579, 581 (D.C.1984); *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C.1984); *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C.1979). Dr. Wilkerson does not argue that she did not owe a duty to Ms. Haymon. *See Gordon v. Neviaser*, 478 A.2d 292, 294 (D.C.1984); *Crain v. Allison*, 443 A.2d 558, 562 (D.C. 1982).

The Supreme Court has established the constitutional right of parents to decide whether to prevent the conception or birth of a child as set forth in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *See also Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Consequently, it is undisputed that Ms. Haymon had the right to seek medical advice regarding a diagnostic procedure designed to impart information which may have led to a decision to terminate pregnancy. In view of the existence of the parental right of choice, and a correlative duty of the health care provider not to deprive the parents of an opportunity to make an informed decision, *Blake v. Cruz*, 108 Idaho 253, 257, 698 P.2d 315, 319 (1984), our only concern is whether a parent may recover damages proximately caused by the breach

of the duty that bears on that right. *See Smith v. Cote*, 128 N.H. 231, ——, 513 A.2d 341, 344 (1986).

## III

There are substantive differences between the instant wrongful birth action for extraordinary medical and other health care expenses which will be incurred as a result of the child's mental and physical abnormalities, and other closely related, but distinguishable, causes of action known as "wrongful life" and "wrongful pregnancy." In a wrongful life action, an abnormal, unhealthy infant, or the parents on the infant's behalf, claim that but for the physician's negligent advice or treatment the child would not have been born to experience the pain and suffering associated with life in an impaired condition. Most courts have refused to recognize a wrongful life action because determining the measure of damages, in their view, necessitates performing "a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and nonexistence." *Becker v. Schwartz, supra*, 46 N.Y.2d at 412, 386 N.E.2d at 812, 413 N.Y.S.2d at 900; *see, e.g., Phillips v. United States*, 508 F.Supp. 537 (D.S.C. 1980); *Blake v. Cruz, supra*, 108 Idaho 253, 698 P.2d 315; *Bruggeman v. Schimke*, 239 Kan. 245, 249–50, 718 P.2d 635, 639 (1986) (and cases cited therein); *but see Turpin v. Sortini*, 31 Cal.3d 220, 643 P.2d 954, 182 Cal.Rptr. 337 (1982); *Continental Casualty Co. v. Empire Casualty Co.*, 713 P.2d 384 (Colo.App.1985); *Procanik v. Cillo*, 97 N.J. 339, 478 A.2d 755 (1984); *Harbeson v. Parke–Davis, Inc.*, 98 Wash.2d 460, 656 P.2d 483 (1983) (en banc), *aff'd*, 746 F.2d 517 (9th Cir.1984).

In a wrongful pregnancy action, the parents of a healthy child claim that negligence in the provision of contraceptives or the performance of a sterilization or termi-

nation of pregnancy operation has led to the birth of an unplanned child. In *Flowers, supra*, 478 A.2d 1073, this court refused to recognize a wrongful pregnancy action,[1] holding that shifting the financial burden of raising an unplanned but healthy child to a physician would be wholly disproportionate to the culpability involved. *Id.* at 1077. This decision was in accord with the majority of jurisdictions. *Id.* at 1075 n. 2; *but see University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983) (en banc); *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967); *Jones v. Malinowski*, 299 Md. 257, 473 A.2d 429 (1984); *Troppi v. Scarf*, 31 Mich.App. 240, 187 N.W.2d 511 (1971).

In a wrongful birth action such as the instant case, a parent of an abnormal, unhealthy child claims that the physician's negligent advice or treatment deprived the parent of the right to decide whether to avoid the birth of a child with congenital defects. The courts that have been presented with this issue are virtually unanimous in concluding that some measure of recovery should be permitted in wrongful birth cases. *See* W. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 55, at 371 (5th ed. 1984) [hereinafter cited as PROSSER & KEETON]. *See generally* Annot., *Tort Liability For Wrongfully Causing One To Be Born*, 83 A.L.R.3d 15 (1978 and 1987 Supp.). Only North Carolina refuses to recognize the wrongful birth action. *See Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985).

Dr. Wilkerson contends that, although *Flowers* involved a wrongful pregnancy action and a healthy child, the rationale of that case bars Ms. Haymon's wrongful birth action even though the damages requested are limited to the extraordinary medical and other health care expenses to

---

1. Reflecting some of the confusion over terminology that has appeared in the courts and legal literature, the *Flowers* court referred to the claim at issue in that case as an action for "wrongful birth." *See Flowers, supra*, 478 A.2d at 1077–78. That action is more properly labeled wrongful pregnancy or wrongful concep-

tion, however, because the action focuses on negligence in preventing pregnancy and the child born was healthy. *See* Note, *Flowers v. District of Columbia: Another Court Refuses to Settle the Question of Damages in Wrongful Conception Cases*, 34 CATH.U.L.REV. 1209, 1211 n. 14 (1985).

be incurred caring for a child afflicted with Down's Syndrome. The *Flowers* court stated that applying standard principles of tort law to Ms. Flowers' situation would require the trial judge to apply the well established "benefit rule," *see* RESTATEMENT (SECOND) OF TORTS § 920 (1979), and the "avoidable consequences" doctrine, *see* RESTATEMENT (SECOND) OF TORTS § 918 (1979). *Flowers, supra,* 478 A.2d at 1076–77. The application of the benefit rule

> would necessarily put at issue before the jury the dollar value to appellant of her child and require testimony and evidence on both economic *and other* advantages and disadvantages of having her in being. Thus, a parent seeking to recover for an unplanned child will be strongly tempted to denigrate the child's value to the extent possible in order to obtain as large a recovery as possible.

*Id.* at 1076 (emphasis in original). Similarly, the application of the avoidable consequences doctrine "would mean that a plaintiff could recover for damages only if he [or she] could demonstrate to the court and jury that he [or she] could *not* have reasonably avoided the consequences of the physicians' negligence; *viz.,* the birth of a healthy child." *Id.* at 1077 (emphasis in original). Since, in the *Flowers* majority's view, a judge or jury would be called upon to consider whether termination of the pregnancy or adoption were reasonable methods of avoiding the consequences of raising an unplanned child, *id.* at 1077 n. 4, the application of these tort doctrines implicates controversial and emotionally charged issues that are "particularly unsuited for the traditional adversarial process of a negligence action in a court of law." *Id.* at 1077.[2] The court in *Flowers* also stated that public policy considerations did not favor imposing the costs of raising

a healthy but unplanned child upon the physicians rather than the parents. *Id.* at 1075. The court observed that permitting parents to seek child-rearing costs in the wrongful pregnancy context would implicate the District of Columbia's announced public policy concerning the importance of a stable home environment and a secure family relationship for children. *Id.* at 1077; D.C.CODE § 16–4501 (1987 Supp.).[3] Dr. Wilkerson's reliance upon *Flowers,* however, is misplaced in the context of this wrongful birth case.

The claimed injury and the economic relief sought by Ms. Haymon are completely distinct from that involved in *Flowers.* Ms. Flowers sought to recover all of the child-rearing expenses associated with raising a normal, healthy child until the age of eighteen. Ms. Haymon concedes on appeal that Dr. Wilkerson should not be held responsible for the expenses of raising a healthy child because the Haymons willingly undertook to conceive and raise a healthy child. She seeks only to recover the wholly unanticipated extraordinary medical expenses which she, and her husband, will incur in raising their mentally and physically handicapped child. Second, the negligently performed tubal cauterization in *Flowers* did not deprive the parents of their right to make an informed decision whether to carry their child to term. By contrast, Ms. Haymon relied on Dr. Wilkerson's advice that amniocentesis was unnecessary, and contends that this negligent advice deprived her of knowledge about the fetus' genetic abnormalities, information which was essential to her parental right to make an informed decision whether to terminate the pregnancy. *See Siemieniec v. Lutheran General Hospital,* 134 Ill.App.3d 823, 827–28, 89 Ill.Dec. 484, 487, 480 N.E.2d 1227, 1230 (1985), *aff'd in part, rev'd in*

---

**2.** The dissenting judge in *Flowers* had a different view of the applicability of these tort doctrines. *See id.* at 1081 (Ferren, J., dissenting) (only evidence of financial benefit, not emotional benefit, may be properly introduced under the benefit rule) and 1081–82 (Ferren, J., dissenting) (termination of pregnancy and adoption are not reasonable means of avoiding the consequences of a physician's negligence under the avoidable consequences doctrine).

**3.** The dissenting judge in *Flowers* perceived a greater threat to parental love and family stability from the severe and uncompensated financial strain due to the unplanned enlargement of the family attributable to the physician's negligence. 478 A.2d at 1078–79 (Ferren, J., dissenting).

*part,* 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987).

In addition, the *Flowers* court's concern with the speculative nature of damages in a wrongful pregnancy action is inapposite in the instant wrongful birth case. Notwithstanding the propriety of the application of the benefit rule and the avoidable consequences doctrine in the wrongful pregnancy context, see note 2, *supra,* these principles do not come into play at all in the calculation of damages in a wrongful birth case. The extraordinary medical costs Ms. Haymon seeks are related solely to the mental and physical defects with which her daughter was born, and are well within the methods of proof available in personal injury cases. *See Robak v. United States,* 658 F.2d 471, 478–79 (7th Cir.1981); *Jacobs v. Theimer,* 519 S.W.2d 846, 849 (Tex.1975); *Dumer v. St. Michael's Hosp.,* 69 Wis.2d 766, 775–76, 233 N.W.2d 372, 377 (1975). Finally, since Ms. Haymon does not seek ordinary child-rearing expenses, the *Flowers* court's desire to avoid inflicting a penalty on a defendant which is wholly disproportionate to the culpability involved is also not implicated here.

### IV

In deciding whether Ms. Haymon's claim for extraordinary medical and other expenses resulting from the wrongful birth of a child with birth defects presents a claim upon which relief may be granted, we begin with the assumption that Dr. Wilkerson's negligence deprived Ms. Haymon of the choice of terminating the pregnancy. Thus, our inquiry necessarily must focus on whether the extraordinary medical and other expenses Ms. Haymon seeks fall within the properly circumscribed measure of damages applicable in wrongful birth actions.

The primary purpose of tort law is to compensate plaintiffs for injuries they have sustained due to the wrongful conduct of others. The normal measure of tort damages is the amount which compensates the plaintiff for all of the damages proximately caused by the defendant's negligence. *See District of Columbia v. Barriteau,* 399 A.2d 563, 566–67 (D.C.1979); *see also* RESTATEMENT (SECOND) OF TORTS § 901[4] and comment (a); PROSSER & KEETON, *supra,* § 4, at 20. The proper application of this standard in a wrongful birth action presents a problem of considerable complexity which the courts have not uniformly resolved. *See, e.g., Robak v. United States, supra,* 658 F.2d at 478–79 (all child-rearing costs should be recoverable); *Smith v. Cote, supra,* 128 N.H. 231, ——, 513 A.2d at 348–50 (only extraordinary costs are recoverable); *compare Berman v. Allan, supra,* 80 N.J. at 433, 404 A.2d at 14–15 (emotional damages, but not medical costs, are recoverable) *with Schroeder v. Perkel,* 87 N.J. 53, 68–69, 432 A.2d 834, 841–42 (1981) (overruling *Berman* in part and permitting recovery of extraordinary medical expenses). Nonetheless, "[t]here is by now quite general agreement that the parents should be permitted to recover at least their pecuniary losses." PROSSER & KEETON, *supra,* § 55, at 371.

These courts are not in agreement, however, on whether recovery should be limited to those expenses incurred during the child's minority or should extend into majority where a child is incapable of self-caring. *See, e.g., Phillips v. United States,* 575 F.Supp. 1309, 1317 (D.S.C.1983) (extraordinary costs recoverable for forty year life expectancy); *Smith v. Cote, supra,* 513 A.2d at 350 (parents may recover extraordinary costs incurred both before and after child reaches majority); *James G. v. Caserta,* 332 S.E.2d 872, 882–83 (W.Va. 1985) (parents will not be made whole by permitting recovery only during minority when child will not be self-sufficient once

---

**4.** RESTATEMENT (SECOND) OF TORTS § 901 provides: The rules for determining the measure of damages in tort are based upon the purposes for which actions of tort are maintainable. These purposes are:
  (a) to give compensation, indemnity or restitution for **harms;**

  (b) to determine rights;
  (c) to punish wrongdoers and deter wrongful conduct; **and**
  (d) to vindicate parties and deter retaliation or violent and unlawful self-help.

majority is reached); *see also Blake v. Cruz, supra,* 108 Idaho at 259, 698 P.2d at 321 (extraordinary costs recoverable beyond age of majority; applying statutory law); *but see, e.g., Bani–Esraili v. Wald,* 69 N.Y.2d 807, ——, 505 N.E.2d 947, 948, 513 N.Y.S.2d 382, 383 (1987) (parents' obligation of support terminates when child reaches majority); *cf. Harbeson v. Parke-Davis, supra,* 98 Wash.2d at 477, 656 P.2d at 494 (damages for parents' emotional distress throughout child's life). Because we review the grant of a Rule 12(b)(6) motion, we are unable to determine from the record before us whether the common law or a District of Columbia statute is applicable and leave resolution of that matter to the trial court in the first instance. *Becker v. Schwartz, supra,* 46 N.Y.2d at 413, 386 N.E.2d at 813, 413 N.Y.S.2d at 901 (in passing on sufficiency of complaint, no occasion to determine with particularity what items of expense or loss may properly be taken into account in computation of damages); *see* D.C.Code §§ 16–916, 21–586, 30–502 (1981 and 1987 Supp.); *Nelson v. Nelson,* 379 A.2d 713, 715 (D.C.1977) (noting that many other jurisdictions have, by case law, imposed on parents a duty to support mentally and physically disabled children after majority but declining to do so where evidence indicated ability of child to support himself); *see, e.g., Feinberg v. Diamant,* 378 Mass. 131, 133, 389 N.E.2d 998, 1000 (1979) (parents' obligation to support their child continues into majority for adult children who are mentally or physically incapacitated and incapable of self-support).

In seeking to recover the extraordinary medical and other health care expenses proximately caused by her physician's negligence, Ms. Haymon seeks damages that are proportionate to the defendant's wrongful conduct.[5] *See Schroeder v. Perkel, supra,* 87 N.J. at 68, 432 A.2d at 841. "By limiting damages to those expenses that are actually attributable to the affliction, we are not conferring a windfall on [Ms. Haymon]. Although [Ms. Haymon] may derive pleasure from [her daughter], that pleasure will be derived in spite of, rather than because of, [her] affliction. [Ms. Haymon] will receive no compensating pleasure from incurring extraordinary medical expenses on behalf of [her daughter]." *Id.* at 69, 432 A.2d at 842. Permitting the recovery of extraordinary medical expenses avoids the speculative damages issue of concern to the court in *Flowers.* Furthermore, allowing recovery for the negligent deprivation of a woman's right to decide whether to terminate her pregnancy is consistent with the District of Columbia's public policy that physicians should be liable for losses proximately caused by their negligence. *See District of Columbia v. Barriteau, supra,* 399 A.2d at 566–67; *see also Schroeder v. Perkel, supra,* 87 N.J. at 69–70, 432 A.2d at 842. To hold otherwise would in effect "immunize from liability" the physician providing inadequate guidance to persons who would choose to exercise their constitutional right to terminate pregnancy where the child, if born, would suffer from genetic defects. *Berman v. Allan, supra,* 80 N.J. at 432, 404 A.2d at 14.

The extraordinary medical expenses attributable to Ms. Haymon's daughter's physical and mental abnormalities are part of Ms. Haymon's loss caused by the deprivation of her right to decide whether to terminate her pregnancy. If Ms. Haymon proves at trial that Dr. Wilkerson deprived her of the parental right to choose whether to avoid the birth of a child afflicted with Down's Syndrome, Dr. Wilkerson can be held liable for the extraordinary medical and other expenses attributable to the care of that child.

Accordingly, we reverse the judgment dismissing Ms. Haymon's cause of action for wrongful birth, and remand the case.

---

5. Since Ms. Haymon appeals only the dismissal of her claim for extraordinary medical expenses, we need not decide whether damages for ordinary child-rearing expenses and emotional distress are recoverable under a wrongful birth action.