136 N.J. Super. 69 (1975)
344 A.2d 336
EMELINA BETANCOURT AND LAWRENCE BETANCOURT, PLAINTIFFS,
v.
DR. E. LESLIE GAYLOR ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
July 30, 1975.
*71 Mr. Malcolm H. Greenberg, Attorney for Plaintiffs.
Mr. Neil Reiseman (Messrs. Conway, Reiseman, Michals & Wahl), Attorney for Defendant, Dr. E. Leslie Gaylor.
Mr. Eugene M. Purcell, (Messrs. Purcell, Ries & Shannon), attorneys for defendant, Dr. Shigeo Kondo.
Mr. Jeffrey K. McKinley, (Messrs. Stevens & Mathias), attorney for defendant, Hospital Center at Orange.
Mr. Anthony J. Andolino, (Messrs. Schwartz and Andolino), attorney for defendant, Planned Parenthood Essex County.
LOFTUS, J.C.C., Temporarily Assigned.
This is an action brought by plaintiffs Emelina and Lawrence Betancourt, husband and wife, against defendants Dr. E. Leslie Gaylor, Planned Parenthood Essex County, Hospital Center at Orange and Dr. Shigeo Kondo. The action seeks money damages for the alleged negligence of defendants with regard to the failure of a sterilization operation performed on Mrs. Betancourt. The complaint generally makes a demand of judgment against defendants jointly and severally, together with costs of suit. In answers to interrogatories propounded by defendants, plaintiffs allege as a measure of damages the costs, emotional upset and physical inconvenience of rearing the child born subsequent to the allegedly negligent sterilization operation. Defendants moved for summary judgment dismissing the complaint. This motion was *72 amended nunc pro tunc to dismiss only those allegations of the complaint as set forth in answers to interrogatories alleging as damages the costs, emotional upset and physical inconvenience of rearing the child in question.
A motion for summary judgment of dismissal concedes, for purposes of the motion, the truth of plaintiffs' evidence and every inference that can legitimately be drawn therefrom which is favorable to plaintiff and denies only its sufficiency in law. Melone v. Jersey Central Power and Light Co., 18 N.J. 163, 170 (1955); Heavener v. Uniroyal, Inc., 63 N.J. 130, 133 (1973); Hirsch v. Travelers Ins. Co., 134 N.J. Super. 466 (App. Div. 1975).
Plaintiffs' evidence and all the legitimate inferences therefrom indicate that on August 17, 1971 Mrs. Betancourt contacted defendant Planned Parenthood in order to avail herself of its family planning services and medical care. On its recommendation she was referred to Dr. E. Leslie Gaylor, who performed the sterilization operation (a bilateral tubal ligation) on plaintiff, Mrs. Betancourt. Defendant Dr. Kondo acted in his capacity as a pathologist on the staff of defendant Hospital Center at Orange, and examined the tissue removed from plaintiff. Some 18 months later, in March 1973, plaintiff ascertained that she was pregnant. She subsequently gave birth to a healthy, normal child.
Defendants rely upon the case of Gleitman v. Cosgrove, 49 N.J. 22 (1967), in support of their motion to dismiss those allegations of the complaint as set forth in answers to interrogatories which seek as money damages the costs, emotional upset and physical inconvenience of rearing the child born subsequent to the allegedly negligent sterilization. Gleitman was an action brought on behalf of an infant and his parents against the defendant physicians for malpractice. The allegations of negligence in that case were that the doctors had failed to advise Mrs. Gleitman of the likelihood that she might give birth to a deformed child because of her contraction of rubella (German measles) *73 early during her pregnancy. As a result of this alleged negligence Mrs. Gleitman did not seek a therapeutic abortion and subsequently gave birth to a deformed child. The trial judge dismissed all counts of the complaint without submitting any of them to the jury. With regard to the claim by the parents for compensatory damages, our Supreme Court, in an opinion expressing the views of three of the seven members of the court, held that denial of the claim for damages was required on the one hand, because substantial policy reasons prevented the court from allowing tort damages for the denial of the opportunity to take an embryonic life and, secondly, and of principal relevancy to the case before us, because compensatory damages were too uncertain to be awarded. The court stated:
In order to determine their compensatory damages a court would have to evaluate the denial to them of the intangible, unmeasurable, and complex human benefits of motherhood and fatherhood and weigh these against the alleged emotional and money injuries. Such a proposed weighing is similar to that which we have found impossible to perform for the infant plaintiff. When the parents say their child should not have been born, they make it impossible for a court to measure their damages in being the mother and father of a defective child. [at 29 and 30]
The Gleitman court denied damages to plaintiff parents on the ground that the doctors' failure to advise plaintiff mother of the availability of an abortion was not actionable at law at a time when abortions were unlawful in New Jersey. The court concluded that the benefits in being the parents of a defective child, as weighed against the emotional losses involved, were so complex and interwined as not to be capable of measurement. The question before this court is whether the decision in Gleitman is controlling in the circumstances of the present case.
At the outset, the factual distinction between the case before this court and Gleitman v. Cosgrove should be noted. Mrs. Gleitman, upon first consulting with her doctor, had *74 already conceived a child. Mrs. Betancourt, however, had not been pregnant when she first consulted defendants. Rather, she consulted defendants for the clear purpose of preventing conception. There was no evidence that Mrs. Gleitman did not wish to conceive a child. The complaint of Mrs. Gleitman was that she wished to be assured of a healthy child or no child at all. Mrs. Betancourt, when consulting her doctors, sought to prevent any conception at all. In addition, it should be noted that the thrust of Mrs. Gleitman's complaint was that her doctor negligently failed to give her advice where it was questionable whether such advice was within her doctor's duty to give. However, Mrs. Betancourt's complaint is that her doctor performed surgery upon her in a negligent manner causing to bring about the very event which surgery was designed to prevent. The Gleitman court, speaking through Mr. Justice Proctor in explaining its holding, said as follows:
Denial of the claim for damages by adult plaintiffs is also required by a close look at exactly what it is they are here seeking. The thrust of their complaint is that they were denied the opportunity to terminate the life of their child while he was an embryo. [49 N.J. at 30]
The thrust of the Betancourts' complaint is that they were denied the opportunity to be free of the added expenses of an additional child through the negligence of defendants in performing the sterilization operation that was designed to bring about that result.
Based upon these factual distinctions, the holding in the Gleitman case should read as follows: where a parent gains benefits through the birth of a child but suffers losses because of some physical defect in the child, the complex coexistence of benefit and loss will operate to preclude a court from establishing a reasonable measure of damages from which a jury could determine compensatory damages. The same complex coexistence of benefit and loss that existed in Gleitman does not exist in the present case. Here, the *75 elements of benefit and loss are separate. The loss is the financial expense which plaintiffs sought to obviate by submitting to surgery. The benefit is whatever benefit a jury may reasonably conclude has accrued to plaintiffs as a result of the newborn child. These are relatively tangible and measurable factors for a jury to consider separate from each other, unlike the intangible, unmeasurable and complex factors involved in Gleitman. The rule in Gleitman is therefore not applicable.
In light of the law's recent recognition of a woman's right to control her own bodily functions, as evidenced by the United States Supreme Court decision in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); cf. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1967), the trier of the facts should be permitted to evaluate whatever damages plaintiffs are entitled to.
In West v. Underwood, 132 N.J.L. 325 (E. & A. 1944), the Court of Errors and Appeals held that if there are proofs from which a jury could find that defendant had undertaken to sterilize plaintiff and negligently failed to do so, plaintiffs were entitled to recover for all pain and suffering, mental and physical, together with the loss of services and "any other loss or damage proximately resulting from such negligence."
The exceptional rule stated in Gleitman not being here applicable, the normal measure of damages in tort actions should be applied. As stated in Gleitman, 49 N.J. at 28, the normal measure of damages in tort actions is compensatory. Damages are measured by comparing the condition plaintiff would have been in, had defendants not been negligent, with plaintiffs' impaired condition as a result of the negligence. See also Zygmaniak v. Kawasaki Motors Corp., U.S.A., 131 N.J. Super. 403 (Law Div. 1974). Here, if it is certain that some damage has resulted from defendants' alleged negligence, an issue on which this court *76 expresses no opinion, mere uncertainty as to the amount of damage should not preclude the right of recovery. The approved practice is to leave it to the good sense of the jury to form the best estimate that can be made under the circumstances. Betenbaugh v. Princeton Hospital, 50 N.J. 390 (1967).
The attention of this court has been directed to decisions in other jurisdictions involving the area of law dealing with compensatory damages for negligent sterilizations. On the question of whether plaintiff parents would be entitled to the costs of rearing a child born as a result of a negligent sterilization, the courts of other jurisdictions are divided. The Court of Appeals of Michigan in Troppi v. Scarf, 31 Mich. App. 240, 187 N.W.2d 511 (1971) held that the question of damages for the cost of rearing a child born subsequent to a negligently filled prescription for birth control pills was a question for the trier of the fact. The United States District Court for the Southern District of West Virginia, in Bishop v. Byrne, 265 F. Supp. 460 (1967), ruled that an action could be maintained by a woman for alleged negligence and breach of warranty in the performance of a sterilization operation and that the question of damages and their amount, if any, would be a question for the jury. The California Court of Appeals, in Custodio v. Bauer, 251 Cal. App.2d 303, 59 Cal. Rptr. 463 (1967), held that if physicians negligently perform a sterilization operation whereby a normal child was born without any resulting physical injury to the mother as a result of the pregnancy, more than nominal damages could be recovered. The District Court of Appeal of Florida in Jackson v. Anderson, 230 So.2d 503 (1970), held that an action could be maintained notwithstanding the fact that the pregnancy following the sterilization operation was uneventful and culminated in the normal delivery of a healthy child, but the court expressed no opinion on the measure of damages.
*77 However, the Superior Court of Delaware, in Coleman v. Garrison, 327 A.2d 757 (1974), in an action by parents for damages alleging the performance of an improper sterilization operation, held that no cause of action would lie for "wrongful life" but that a cause of action would exist for "wrongful pregnancy," thereby limiting the scope of the injury to the expenses attending the unexpected pregnancy of a woman. The Court of Civil Appeals of Texas in the case of Terrell v. Garcia, 496 S.W.2d 124 (1973), held that even if negligence on the part of the physician in performance of the sterilization operation were assumed, plaintiffs would not be entitled to recover damages. The Supreme Court of Wisconsin in Rieck v. Medical Protective Co. of Fort Wayne, Ind., 219 N.W.2d 242, 64 Wis.2d 514 (1974), an action brought by parents to recover the costs of rearing a child on the theory that defendant's failed to determine that the mother was pregnant in time to permit an operation to terminate the pregnancy, held that the complaint did not state a cause of action.
While a review of these cases provide the arguments pro and con, this court is bound by the decision of the Court of Errors and Appeals in West v. Underwood, 132 N.J.L. 325 (E. & A. 1944). Thus "any other loss or damage proximately resulting from" the negligent sterilization operation, including the costs, emotional upset and the physical inconvenience of rearing a child may be recovered at law.
Thus, defendants are not entitled to summary judgment as a matter of law under R. 4:46-2. The motions for summary judgment are hereby denied.