432 A.2d 239

Phyllis STRIBLING and Howard Stribling

v.

Donald G. deQUEVEDO and Nestor G. deQuevedo, Appellants.

Superior Court of Pennsylvania.

Argued March 28, 1978.

Filed Jan. 11, 1980.

Paul A. Barrett, Scranton, for appellants.

Thomas J. Foley, Jr., Scranton, for appellees.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

This is an appeal by appellant–physicians, Doctor Donald S. and Nestor G. deQuevedo, from an order of the Court of Common Pleas of Lackawanna County that overruled their demurrers to appellee–plaintiffs' complaint for recovery of damages incident to an alleged wrongful birth of their son occurring by reason of the alleged negligence of the physicians. Since the issue involved is one that concerns a "controlling question of law as to which there is a substantial ground for difference of opinion,"[1] we allowed the appeal from the interlocutory order. We affirm in part and reverse in part.

The record reveals that appellees, Phyllis and Howard Stribling decided that Phyllis would be sterilized. In December, 1971, Phyllis went to appellants, who performed a bilateral tubal ligation on her and, allegedly, the Striblings were assured of the success of the surgery. Despite the operation, however, Phyllis became pregnant and gave birth

1. Appellate Court Jurisdiction Act of 1970 being the Act of July 31, P.L. 673, No. 223, 17 P.S. § 211.501; *repealed* by Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[1443]. *See now* 42 Pa.C.S. § 702 (1979).

to a son in September, 1974. This child was born with dextrocardia, a condition in which one's heart is farther to the right than is normal. The parents allege that this condition will require medical care and treatment.

The parents brought this action in trespass against the physicians based on three counts. In the first count, Phyllis sued for the recovery of her mental and emotional distress and physical pain she suffered at the time of and subsequent to the operation. She also seeks recovery for her lost earnings and earning capacity as the result of the birth of her son. In the second count, Howard, the plaintiff husband, sued the physicians for the medical and rearing expenses he has incurred and will incur relating to the birth of his son, along with recovery for his wife's medical expenses and loss of consortium. The third count also seeks recovery on the child's part for the damages he will sustain as a result of having been born with dextrocardia.

The complaint also alleges that the physicians were negligent in their failure to advise the parents of "the possible sequelae of the operation," in their failure to take the necessary steps to sterilize Phyllis so that she would not become pregnant, in their misrepresentation of the benefits of the operation, and their failure to use the necessary care and skill required of physicians in the community.[2]

■ To this complaint appellants filed preliminary objections, first in the nature of a demurrer alleging that no cause of action existed upon which the parents could claim relief. On a demurrer to the complaint the lower court accepts as true all the pertinent allegations in the complaint when deciding the merits of the preliminary objections. *Satchell v. Ins. Placement Fac. of Pa.*, 241 Pa.Super. 287, 292, 361 A.2d 375, 377 (1975).[3]

---

**2.** For a discussion of a doctor's duties of care to their patients, express and implied, see cases cited in *Speck v. Finegold*, 268 Pa.Super. 342, at 350 n. 7 and 8, 408 A.2d 496, 500–01 n. 7 and 8 (1979).

**3.** For additional case law on the effect of a demurrer to plaintiffs' complaint see *Speck v. Finegold*, supra.

The lower court overruled the demurrer, holding that to deny the parents a cause of action based on the negligent sterilization procedure would be to excuse these physicians from accountability for one type of operation while they remain accountable for every other type of surgery they perform.[4] This the court held it could not do and instead found that a legally cognizable action at law existed and the demurrer was overruled.

The issue before us now is whether the pleadings in this case set forth a legally cognizable action at law upon which relief can be granted. Until a short time ago, the appellate courts of Pennsylvania had not addressed this issue. However, in our recent case of *Speck v. Finegold*, 342 Pa.Super. 268, 408 A.2d 496 (1979), we recognized that the parents of a child born subsequent to negligent sterilization and abortion procedures had a right to recover for the costs of rearing the child and medical damages pertaining to the child's condition together with claimed medical, mental and emotional, and physical pain and suffering arising out of the operations. This holding from *Speck* can be applied to the facts of the instant case.

The *Speck* case involved parents who feared they would conceive a third child, since the father was affected with the crippling disease of neurofibromatosis and had already transmitted the disease to two of his daughters. The father underwent a vasectomy, after which the doctor (urologist) informed him he would be sterile. Subsequently, his wife became pregnant and underwent an abortion procedure after which the physician (obstetrician) assured the plaintiffs that the pregnancy had been terminated. However, Mrs. Speck then gave birth to her third child who was affected with the crippling hereditary disease of her father. After an exhaustive analysis of the case law from other jurisdic-

4. Appellants second and third preliminary objections were for more specific pleading and to strike off Paragraph 9(f) of the parents' complaint. The lower court granted these objections and they are not now the subject of this appeal.

tions, we held that the child could not recover for "wrongful life" for three reasons:

"First, there is no precedent in appellate judicial pronouncements that holds a child has a fundamental right to be born as a whole, functional human being. Whether it is better to never have been born at all rather than to have been born with serious mental defects is a mystery more properly left to the philosophers and theologians, a mystery which would lead us into the field of metaphysics, beyond the realm of our understanding or ability to solve. The law cannot assert a knowledge which can resolve this inscrutable and enigmatic issue. Second, it is not a matter of taking into consideration the various and convoluted degrees of the imperfection of life. It is rather the improbability of placing the child in a position [he] would have occupied if the defendants had not been negligent when to do so would make [him] nonexistent . . . . Thus, a cause of action brought on behalf of an infant seeking recovery for 'wrongful life' on grounds [he] should not have been born demands a calculation of damages dependent on a comparison between Hobson's choice of life in an unimpaired state and nonexistence. This the law is incapable of doing."

"Finally we hold that . . . this is not an action cognizable at law." (342 Pa.Super. at 364, 408 A.2d at 508).

As to the parents' claim for damages for the costs of rearing the child we held that "plaintiff–parents' cause of action allege[s] in traditional tort language that but for defendant's breach of duty to properly treat and advise plaintiff–parents they would not have been required to undergo the expenditures alleged. In these allegations plaintiff–parents set forth a duty owed to them by the doctors and breached, . . . with resulting injuries to the plaintiffs." 268 Pa.Super. at 364, 408 A.2d at 508). In reaching this decision we recognized that the public policy of this Commonwealth, in keeping with the dictates of the United States Supreme Court, permits sterilization proce-

dures.[5] In consonance with this view, we carefully considered the precedents from other states which recognize a cause of action for a negligently performed sterilization operation. *See, e. g., Becker v. Schwartz,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn.1977); *Anonymous v. Hospital,* 33 Conn.Sup. 126, 366 A.2d 204 (1976); *Bentancourt v. Gaylor,* 136 N.J.Super. 69, 344 A.2d 336 (1975); *Custodio v. Bauer,* 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967).[6] Based on these precedents and general principles of tort law, we concluded that in the last analysis, the "plaintiffs' complaint sounds essentially in negligence, tortious breach of contract, and/or medical malpractice," and if the duty towards the plaintiffs could be proved at trial, together with the breach of that duty as it relates to the proximate cause of the injuries to the parents, recovery is available in Pennsylvania.[7]

As for the parents' recovery for mental and emotional distress beyond what they suffered as a result of the surgeries, we held in *Speck* that recovery must be denied. See *Becker v. Schwartz,* 46 N.Y.2d at 412, 413 N.Y.S.2d at 901, 386 N.E.2d at 813. Specifically we held that:

> "Unlike the measureability of pecuniary loss, to which plaintiff–parents are entitled, there is no legal realm of accountability to which they can look for claimed mental and emotional damages arising out of the birth of their child which could factually place them in a more favorable category than parents who generally, in the vicissitudes and vagaries of life, face the everyday potential of pain and suffering in the raising of their children. It is not

5. Pa. Human Relations Act, 43 P.S. § 955.2 (1973); Pa. Abortion Control Act, 35 P.S. § 6601 et seq. (1974); *Speck v. Finegold,* 268 Pa.Super. at 356, n. 17, 408 A.2d 496.

6. See also cases cited in *Speck v. Finegold,* 268 Pa.Super. at 362, 408 A.2d 496, n. 22.

7. In his Concurring and Dissenting Opinion to *Speck v. Finegold,* Judge Price agreed the parents should recover damages incident to the vasectomy and abortion surgeries, but would not allow recovery for the child rearing costs.

possible to distinguish the mental and emotional travail which plaintiffs claim here from the pain and suffering of parents who raise a retarded child or whose infant is born blind or mongoloid or falls heir to one of the countless natural diseases or being healthy becomes permanently injured, disfigured or handicapped by reason of accident. . . . Therefore, to allow plaintiffs' claim for mental and emotional stress would be to give them a societal advantage not conceivable in other cases of parenthood."

The facts in the instant case are less complex than those in the *Speck* case in that the case before us only involves an allegedly negligent sterilization procedure. However, the *Speck* reasoning is applicable and dispositive of our factual situation. Initially we agree with the lower court's finding that the parents' complaint states a cause of action upon which relief can be granted for the negligent sterilization. More specifically, we affirm the overruling of appellants' demurrer as it relates to Count I insofar as it allows recovery to Phyllis for her lost earnings, physical pain and suffering and emotional distress incident to the negligent surgery. However, we reverse the holding of the lower court as it relates to the allowance to plaintiff parents of recovery for emotional and mental distress incident to the birth and raising of the child. As we said in *Speck*, we cannot hold such an action cognizable at law.[8]

We also affirm the overruling of appellants' demurrer as it relates to Count II of the complaint. The father's claim for the damages incident to the birth and rearing of his son and recovery for his wife's medical expenses sounds in traditional tort language and is a cause of action which, if proved at trial, can result in recovery. *Speck v. Finegold*, supra. Finally, the lower court's decision concerning Count III is upheld only if that count is construed to mean that the parents are claiming recovery in themselves for the medical expenses they have and will incur due to the birth of their

8. In his Concurring and Dissenting Opinion to *Speck v. Finegold*, supra, Judge Spaeth would have allowed recovery for mental and emotional distress incident to the birth of the child. See *Berman v. Allan*, 80 N.J. 421, 404 A.2d 8 (1979).

son and the treatment of his dextrocardia. This aspect of plaintiff–parents' claim is included and already decided in our discussion of Count II. As we have already explained, we are not recognizing a cause of action in the child for "wrongful birth," therefore, insofar as Count III alludes to this claim, it is denied and we uphold the physicians' demurrer as to a cause of action in the child.

Order of the lower court affirmed in part, reversed in part and case remanded.

PRICE, SPAETH and HESTER, JJ., file concurring and dissenting statements.

VAN der VOORT, J., files a concurring and dissenting opinion.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

PRICE, Judge, concurring and dissenting:

This statement is based on my Concurring and Dissenting Opinion in *Speck v. Finegold*, 268 Pa.Super. 342, 408 A..2d 496.

SPAETH, Judge, concurring and dissenting:

I agree with the result reached by the majority except in one respect. I believe that the parents should be permitted to recover (if they can prove) damages for emotional distress and physical inconvenience attributable to the birth of their son. I stated my reasons for this belief in my concurring and dissenting opinion in *Speck v. Finegold*, 268 Pa.Super. 342, 408 A.2d 496 (1979). *And see Berman v. Allan*, 80 N.J. 421, 404 A.2d 8 (1979); *Betancourt v. Gaylor*, 136 N.J.Super. 69, 344 A.2d 336 (1975); *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967).

The order of the lower court should be affirmed.

HESTER, Judge, concurring and dissenting:

I agree with and join the majority Opinion with the exception of the point discussed below.

I would not permit the parents to recover for the costs of rearing the child.

VAN der VOORT, Judge, concurring and dissenting:

I concur in the principle of law that damages may be claimed by persons injured by a negligent performance of operations upon persons to prevent pregnancies, however, I believe that the scope and range of the damages established in this case and in the case of *Speck v. Finegold* are far too broad. Consequently, I concur and dissent in the manner and to the extent of the Concurring and Dissenting Opinion of Judge PRICE in the *Speck* case.